# APPENDIX B

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MARION

| | |
|---|---|
| RANDY JOSEPH MOORE, | Case No. 98C-15019 |
| Petitioner, | |
| v. | AFFIDAVIT OF KIM L. JORDAN |
| MITCH MORROW, Superintendent, Oregon State Penitentiary, | |
| Defendant. | |

STATE OF OREGON )
) ss.
County of Josephine )

I, Kim L. Jordan, being first duly sworn on oath, depose and say:

1. I am an attorney licensed to practice law in the State of Oregon, and in that capacity I represented Randy Joseph Moore in *State of Oregon v. Randy Joseph Moore*, Josephine County Circuit Court Case No. 96CR-0118. I make this affidavit in response to petitioner's claim of inadequate assistance of trial counsel.

2. I did not fail to review petitioner's statement to the police. I read it many times and discussed it at length and in detail with Mr. Moore. He affirmed to me that it was true, and that it was accurate.

3. I did not file a Motion to Suppress. My reasons for doing this were two-fold. First of all, petitioner's interview with the police, which was taped and transcribed, a copy of the

Page 1 - AFFIDAVIT OF KIM L. JORDAN
TRI32071/SSA/sgr

Department of Justice
1162 Court St. NE, Rm. 100
Salem, Oregon 97310-0506
(503) 378-6313

RESPONDENT'S
EXHIBIT
120
01-1745-ST

transcription is attached to this affidavit, makes it abundantly clear that Mr. Moore was not in custody. He never believed that he was in custody and admitted to me that he realized he was not in custody when he and his brothers and another friend voluntarily came to the police department to give the recorded statement. The law as I understood it then and now is exemplified by *State ex rel Juv. Dept. v. Loredo,* 125 Or App 390, and *State v. Smith,* 310 Or 1.

4. In addition, however, Mr. Moore had previously given a full confession to his brother Raymond Moore and to a woman named Debbie Ziegler. Mr. Moore and I discussed the possibility of filing a Motion to Suppress and concluded that it would be unavailing, because in the first place, he knew he was not in custody at the time he gave the recorded interview and that the statement was voluntary, and in the second place, he had previously made a full confession to his brother and to Ms. Ziegler, either one of whom could have been called as a witness at any time to repeat his confession in full detail.

5. Mr. Moore's older brother Raymond was an active church member and I investigated his church status to determine whether, under the rules of the church to which he belonged, he had the right to hear confessions and could therefore claim some privilege. Raymond Moore did not hold a position in his church that allowed him to hear confessions and therefore, in my opinion, no priest-penitent privilege applied to anything Randy Moore had previously told to his brother in their pre-police interview conversation.

6. I believe that I reviewed every aspect of the law and the facts regarding this case. I discussed the case at length with Mr. Moore and reviewed the extensive police reports, some of which are attached to this affidavit. I do not recollect any material statement of fact in the police report with which Mr. Moore disagreed. Mr. Moore always claimed his actual shooting of the victim was an accident, but there was never the smallest doubt that it occurred during a kidnap

Page 2 -   AFFIDAVIT OF KIM L. JORDAN
            TRI32071/SSA/sgr

Department of Justice
1162 Court St. NE, Rm. 100
Salem, Oregon 97310-0506
(503) 378-6313

which began with an assault. We discussed at length the felony murder rule. We also discussed at length the fact that he had not yet been indicted for any conduct and that it was possible that when an indictment came down from the grand jury, it could be for any charge up to and including aggravated murder. However, I made it very clear to Mr. Moore that he was not charged with aggravated murder and that in fact, the grand jury had not yet considered his case, so that the options were fully open for the district attorney to seek whatever charge or charges the district attorney thought might be justified.

7. At no time did I ever tell Mr. Moore that he could receive the death penalty if convicted "although petitioner was not charged with aggravated murder." I discussed at great length with Mr. Moore the definitions of "aggravated murder," "murder," and "felony murder." I did tell Mr. Moore that if he were charged with aggravated murder and if the jury decided that murder had been committed under ORS 163.095(e), in the course of or as a result of intentional maiming or torture," that it was not impossible that he might be convicted of aggravated murder if he were ever in fact charged with aggravated murder. At no time did I ever tell Mr. Moore that he *was* charged with aggravated murder, or that I thought he *would be* charged with aggravated murder. We simply discussed all possibilities.

8. The victim in this case had been assaulted, bloodied, bound with duct tape, placed in the trunk of a car, taken to an isolated rural location, marched into the woods while still bound, and shot. Furthermore, the victim had an extremely large protruding abdominal hernia for which he always wore a truss. I discussed with Mr. Moore the possibility that if he were ever charged with aggravated murder that the jury might, after taking into account all of the facts of the case, conceivably find that he had engaged in "torture" of a helpless and somewhat disabled victim. I did not ever tell Mr. Moore that I thought that this was going to be what he was charged with or

Page 3 - AFFIDAVIT OF KIM L. JORDAN
TRJ32071/SSA/sgr

Department of Justice
1162 Court St. NE, Rm. 100
Salem, Oregon 97310-0506
(503) 378-6313

convicted of. I then felt that it would have been malpractice on my part not to have pointed out to him this was a possibility, however remote. I would still consider it malpractice not to have brought it to his attention, or to have attempted to assure him that this would not or could not happen to him.

9. Attached to this affidavit is a copy of the plea petition signed by Mr. Moore in connection with his plea to the final single charge of felony murder. On the face of the plea petition, it states that he is to receive "life parole" and on the addendum to the plea petition it clearly notes that "Measure 11" and ORS 137.700 apply to his case. I carefully explained to Mr. Moore and he clearly understood that "Measure 11" had been codified by the legislature and that ORS 137.700 stood independent of "Measure 11."

10. I simply never told Mr. Moore that he would retain 5th Amendment rights against self-incrimination by entering a plea of no contest. We discussed the possibility of him being called as a witness to testify against a third codefendant, Roy Salyer, because his plea would waive any right he might have against his plea would waive any right he might have against self-incrimination. Mr. Moore was willing to testify against Mr. Salyer if called as a witness. Mr. Moore understood perfectly that by entering a plea of no contest he waived any rights he might have against future self-incrimination and understood that he could be compelled as a witness against the codefendant if the State served him a subpoena to compel his testimony.

11. I did not inform Mr. Moore that he could be sentenced under ORS 137.635. He *was not* sentenced under ORS 137.635 and there was never a suggestion that he might be sentenced under 137.635. Attached to this affidavit is a copy of the sentence order in Mr. Moore's case which shows on its face that he was sentenced under Measure 11, ORS 137.700 and

Page 4 -   AFFIDAVIT OF KIM L. JORDAN
TRI32071/SSA/sgr

Department of Justice
1162 Court St. NE, Rm. 100
Salem, Oregon 97310-0506
(503) 378-6313

ORS 163.115(5)(b). Frankly, I do not know why the court made reference to 137.635 in the Judgment Order except to make it clear that Mr. Moore was not eligible for any kind of diminishment of sentence under any law whatsoever. If this created some kind of a constitutional issue by virtue of the Court entering what I believe to be empty surplus verbiage on the Sentence Order, then questionably, I did miss it.

12. I never did advise Mr. Moore that if he did not take the plea offer his brother Lonnie Wollheiser would also be charged with felony murder. Scott Titzler, the Deputy District Attorney in charge of the case made it absolutely clear that although he was making a settlement offer to Mr. Moore and his brother at the same time, and that while Mr. Moore was to be charged with murder, and his brother was to be charged with lesser offenses, the two plea offers were not contingent upon one another, but were based upon Mr. Titzler's independent evaluation of the respective cases.

13. It was clear, I believe, in everybody's mind, that Mr. Moore denied any premeditated intent to kill the victim, but that it was an accidental killing in the course of an assault and kidnapping. Under the facts it was quite clear the Mr. Moore's brother was less physically involved in the actual killing than was Mr. Moore. Mr. Moore was actually holding the gun which fired the fatal shot. Scott Titzler made it perfectly clear to me and I made it perfectly clear to Mr. Moore that the offer made to him was separate from and unconnected with the other offer made to his brother. Mr. Moore was, throughout our association, probably more concerned about his brother than about himself. Mr. Moore believed that he was guilty of murder under the felony murder rule, although he felt that it was very unfortunate and lamentable that he was guilty since he always maintained that the actual firing of the shot was an accident rather than a premeditated act. Mr. Moore felt very strongly that his younger brother, Lonnie Wollheiser, was

Page 5 - AFFIDAVIT OF KIM L. JORDAN
TRI32071/SSA/sgr

much less culpable than he was himself and was very interested in the offer the State was making to his brother

14 Mr Moore and I discussed at great length whether it was in his best interest to try to press the case to early resolution or to waive all time constraints for speedy trial and immediate indictment in an attempt to secure the best possible resolution of the case. Mr. Moore was fully aware of his right to speedy trial, and of his right to speedy presentment to a grand jury by requesting a preliminary hearing. After full discussion with me, he voluntarily waived those rights.

15 The allegation that there is a defect in the charge because the information was filed in District Court rather than in Circuit Court is simply a misunderstanding on Mr. Moore's part of the procedural path that felony criminal charges took through the justice system at that time. All felony informations were filed in District Court at that time, and the only way to bring a felony matter to resolution in Circuit Court was by waiving presentment by requesting a preliminary hearing or by insisting on a grand jury indictment. There is no constitutional defect either in the delay or in the court in the venue in which the charges were initially presented.

16 I never coerced Mr Moore into doing anything I have been practicing law since 1967 and have always served exclusively as defense counsel. The negotiated plea which we entered into with the district attorney did not include any charges of Measure 11 assault or Measure 11 kidnapping I thought that it was the best we could do under the circumstances and I told Mr Moore this I also made it very clear every time it came up, that the decision of whether to take or to reject a plea offer was entirely Mr Moore's responsibility.

17 I informed Mr Moore that I frankly believed if we went to trial he would be found guilty of assault, kidnapping, and murder (as was his codefendant, Roy Salyer, who chose trial as

Page 6 - AFFIDAVIT OF KIM L. JORDAN
TRI32071/SSA/sgr

Department of Justice
1162 Court St. NE, Rm. 100
Salem, Oregon 97310-0506
(503) 378-6313

an option), but I did not presume to tell Mr. Moore what he should do. I only told him what I thought the result would be of the various choices he had before him. I explained to Mr. Moore that if he chose not to accept the offer which the State had made to him, I expected that the district attorney would charge him with assault in the first degree, kidnapping, and murder, and would go to trial on those charges. At no time during our association did I ever tell Mr. Moore what he should do. I only explained to Mr. Moore as carefully as I could what I thought the result would be of his actions if he chose one option or another.

18. As I have discussed above in connection with paragraph (d)(E), I did not object to "the sentencing court's imposition of sentence under ORS 137.635." Mr. Moore was not sentenced under that statute. I did not believe that he had been sentenced under that statute. I am confident the judge did not believe he had been sentenced under that statute, and I am confident the district attorney did not believe he had been sentenced under that statute. Furthermore, Mr. Moore did not believe he had been sentenced under that statute.

19. From my thorough discussions with Mr. Moore, I know that he believed that he was being sentenced under "Measure 11" and its statutory codification, ORS 137.700. Mr. Moore understood that under the terms of "Measure 11" and ORS 137.700, he would be eligible for no early release, no halfway houses no reduction in sentence under any statute and that he could expect to serve all of the 300 months to which he understood he would be sentenced. We discussed at length his current age and how old he would be at the end of 25 years. We

Page 7 - AFFIDAVIT OF KIM L. JORDAN
TRI32071/SSA/sgr

Department of Justice
1162 Court St. NE, Rm. 100
Salem, Oregon 97310-0506
(503) 378-6313

Excerpts of Record 59

discussed the likelihood of whether he would survive to be released. I am certain Mr. Moore had no illusions as to the law he under which he was being sentenced or as to the terms of the sentence he was going to be required to serve.

Kim L. Jordan
Attorney at Law

SUBSCRIBED AND SWORN to before me this 26 day of February, 1999.

Notary Public for Oregon
My Commission Expires: _____

OFFICIAL SEAL
KATHLEEN M. VAN DYKE
NOTARY PUBLIC-OREGON
COMMISSION NO. 309625
MY COMMISSION EXPIRES JULY 06, 2001

Page 8 -   AFFIDAVIT OF KIM L. JORDAN
           TRI32071/SSA/sgr

Department of Justice
1162 Court St. NE, Rm. 100
Salem, Oregon 97310-0506
(503) 378-6313